UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JEREMIAH BUTLER,

               Plaintiff,

vs.                                    Case No.  2:06-cv-206-FtM-29SPC

JAMES   R.   MCDONOUGH;   CHARLES
MATTHEWS; CHARLES W. SHOCKLEY,

               Defendants.

_____

**OPINION AND ORDER**

I.

    This matter comes before the Court upon review of the Motion to Dismiss filed on behalf of Defendants McDonough, Matthews, and Shockley.  (Doc. #30.)  Plaintiff filed a Response to the motion and a "pleading for summary judgment," which the Court construes as a supplemental response.[1]  (Docs. #32, #36.)  This matter is now ripe for review.

II.

    Plaintiff, who is proceeding *pro se* and currently in the custody of the Florida Department of Corrections filed a § 1983 civil rights Complaint form on April 20, 2006.  The Complaint names

_____

[1]Although titled a "pleading for summary judgment," Plaintiff's re-alleges the facts in his Complaint and the arguments contained in his first response to the motion to dismiss. Plaintiff attached some of the same exhibits as those attached to the Complaint and Plaintiff's first response to the motion to dismiss.  New exhibits include classification forms dated 2006, which are unrelated to the Complaint *sub judice*.  As such, the Court construes the "pleading for summary judgment" to be a supplemental response.

the following Defendants: James R. McDonough (Secretary of the Florida Department of Corrections), Charles Matthews (Assistant Warden, Okeechobee Correctional Institution), and Charles Shockley (Inmate Grievance Administrator, Bureau of Inmate Grievance Appeals). Complaint at 6-7. The Complaint alleges constitutional violations stemming from two disciplinary reports that Plaintiff received while he was incarcerated at Okeechobee Correctional Institution (hereinafter "Okeechobee Correctional"), which Plaintiff claims he "beat on appeal," and for Plaintiff's "CM placement [at Charlotte Correctional] that [Plaintiff] beat on appeal." Id. at 8, 14.

While incarcerated at Okeechobee Correctional, Plaintiff received the first disciplinary report from Correctional Officer Greaves (not a named Defendant) for "obscene and profane acts" on August 23, 2005.[2] Id. at 8. The following day, "Ms. Greaves wrote Plaintiff another disciplinary report" for a subsequent obscene and profane act. Id. On August 30, 2005, Plaintiff was found guilty of both the August 23 D.R. and the August 24 D.R., resulting in a twenty-two (22) day loss of gain time for the August 23 D.R. and

---

[2]The August 23, 2005, D.R. at #404-051018 was re-processed and renumbered #404-051142 (hereinafter "August 23 D.R."). The August 24, 2005, D.R. at #404-051019 was also re-processed and renumbered #404-051144 (hereinafter "August 24 D.R."). Plaintiff received the D.R.'s for violating section 9-1, which prohibits an "[o]bscene or profane act, gesture, or statement--oral, written or signified." Fla. Admin. Code 33-601, section 9-1.

thirty (30) days disciplinary confinement for the August 24 D.R. Id.

On September 6, 2005, Plaintiff appealed both disciplinary reports issued by Ms. Greaves, arguing that the investigating officer was required to obtain a witness statement from Ms. Greaves because Plaintiff identified her as a witness, even though Ms. Greaves wrote the disciplinary report.  Id., Exh. 1 Inmate Grievance dated Sept. 6, 2005.  While admitting that the Florida Administrative Code does not provide inmates with an "absolute right" to call witnesses, Plaintiff alleged a denial of his due process rights.  Id., Inmate Grievance at 2.  Plaintiff argued that the failure to obtain a witness statement from Ms. Greaves warranted a reversal of the team's findings and dismissal of the disciplinary reports.  Id.  Charlotte Correctional approved Plaintiff's appeal, noting that the disciplinary reports would be removed from the inmate data base and would be returned to Security for re-processing and a re-hearing "due to the failure to secure a witness statement from Ms. Greaves as requested."[3]  Id. at Exh. 1, Response dated Sept. 19, 2005.  On September 27, 2005, Plaintiff went to "D.R. Court" for the second time and was again found guilty of both the August 23 and August 24 disciplinary reports.

_____

[3]Notably, however, all of the Disciplinary Hearing Worksheets, Section III, indicate that a witness statement was read.  See Complaint, Exh. 1 at "Charging Disciplinary Report" (hereinafter "CDR") dated Aug. 23, 2005, CDR dated Aug. 24, 2005, CDR (re: Aug. 23 D.R.) dated Sept. 20, 2005, CDR (re: Aug. 24 D.R) dated Sept. 20, 2005.

Complaint at 9.   Plaintiff again filed an appeal at the institutional level arguing that he was "denied procedural due process" as a result of the re-processing of the disciplinary reports that resulted in a second hearing, but this time Defendant Matthews denied the appeal.   Id. at Exh. 1, Grievance dated Sept. 30, 2005, Response dated Oct. 14, 2005.   Plaintiff appealed the alleged "procedural error" to the Secretary of the Department of Corrections.   Id. at Exh. 1, Grievance to Secretary, Florida Department of Corrections dated Nov. 7, 2005.   The Secretary denied the appeal, noting that the response received a the institutional level was appropriate.   Id., Response from Secretary DOC dated Nov. 29, 2005.

Thereafter, Plaintiff was transferred from Okeechobee Correctional to Charlotte Correctional Institution and was placed on "C/M II status," allegedly as a result of the disciplinary reports.   Id. at 12.   Plaintiff appealed Charlotte Correctional's classification decision at the institutional level, but the appeal was denied.   Plaintiff then filed an appeal to the Secretary of the Department of Corrections, which was "approved pending further inquiry." Id. at Exh. 1, Response Florida Department of Corrections dated Nov. 16, 2005. Subsequently, Charlotte Correctional provided an "Amended Response" to Plaintiff indicating that the Administration at Charlotte Correctional would remove Plaintiff from Close Management and place him in Administrative Confinement pending a review.   Id. at 10, Exh. 4 Charlotte Correctional's

Response dated Nov. 28, 2005.  Plaintiff avers that the Response from the Secretary of the Department of Corrections informed Plaintiff that if he was not satisfied with Charlotte Correctional's Amended Response, then Plaintiff could file another appeal to the Secretary of the Department of Corrections.  Id. Plaintiff filed an appeal with the Secretary of the Department of Corrections after receiving Charlotte Correctional's Amended Response, alleging a "due process" and double jeopardy violation. Id. at 10, 12.  Contrary to the Secretary's previous response, the Secretary now informed Plaintiff that he should have initiated an informal appeal at the institutional level.  Id. at 11.

Plaintiff summarizes why he names each Defendant and explains that he names Defendant Matthews "for having the D.R.'s reprocessed and reheard after I won on appeal.  For hearing both my appeals and denying my requested remedy . . . ."  Id. at 13.  Plaintiff names Defendant Shockley because "Shockley wrote his signature approving the response" from S. Milliken (not a Defendant), in which Plaintiff was informed that he could file an appeal of Charlotte Correctional's Amended Response to his grievance concerning his classification status to the Secretary of the Department of Corrections; however, when Plaintiff filed the grievance to the Secretary, the grievance was returned with a response stating that Plaintiff should have filed a grievance at the institutional level. Id.  With regard to Defendant McDonough, Plaintiff states that he names McDonough as a defendant since he is the "interim secretary"

of the Florida Department of Corrections and "is responsible for Charles Shockley and Charles Mattews [sic] actions and inactions." Id.

As relief, Plaintiff requests the following: expunge the two disciplinary reports, remove Plaintiff from "C/M custody," re-instate Plaintiff's visitation privileges, and monetary damages. Id. at 15.

### III.

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. Christopher v. Harbury, 536 U.S. 403, 406 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); Dura Pharms., Inc. v. Broudo, 125 S. Ct. 1627, 1634 (2005). However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." See Bell Atlantic Corp. v. Twombly, _____ U.S. _____, 127 S.Ct. 1955, 1965, 1968-69 (2007) (citations omitted) (abrogating Conley v. Gibson, 355 U.S. 41 (1957) and stating that Conley did not set forth the minimum standard governing a complaint's survival under a motion to dismiss, rather the case "described the breadth of opportunity to prove what an adequate complaint claims"). With respect to § 1983

cases that involve individuals entitled to assert qualified immunity, the Eleventh Circuit imposes "heightened pleading requirements." Swann v. Southern Health Partners, Inc., 388 F.3d 834 (11th Cir. 2004)(citing Leatherman v. Tarrant County, 507 U.S. 163 (1993)). The heightened pleading standard is not otherwise applicable. The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Secs., Inc., 358 F.3d 840, 845 (11th Cir. 2004). Dismissal is warranted however if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009-10 (11th Cir. 1992). The Court need not accept unsupported conclusions of law or of mixed law and fact in a complaint. Marsh, 268 F.3d at 1036 n.16.

Defendants argue that the Complaint fails to state a § 1983 claim. Mot. to Dismiss at 1, 10-13. Defendants also raise Eleventh Amendment immunity and qualified immunity as defenses. Id. at 1. With regard to Defendants McDonough and Shockley, Defendants argue that Plaintiff predicates liability on these defendants based on theories of supervisory liability or *respondent superior* since these Defendants did not personally participate in the alleged violations. Id. at 14. Thus, the Defendants argue

that since the Complaint does not set forth a causal connection between Defendants McDonough and Shockley, the Complaint is due to be dismissed as to these Defendants.  Id. at 14-15.

In response, Plaintiff, *inter alia*, reiterates the facts in the Complaint, arguing violations of his First, Fifth, and Eighth Amendment rights under the United States Constitution.  Response at Doc. #36.  Plaintiff maintains that his due process rights were initially violated because the disciplinary hearing team did not have "all of the evidence" since the investigating officer did not take a witness statement from Ms. Greaves (the author of the disciplinary report), who Plaintiff named as a witness.  Id. at 7-8, 12.  Additionally, Plaintiff cites to the Florida Administrative Code 33-601.309(4), arguing that the re-processing and re-hearing of the disciplinary reports violated Plaintiff's due process rights because it was Defendant Matthews, the assistant warden, who authorized the re-hearing.[4]  Id. at 8, 10, 12.  Although not raised in his Complaint, Plaintiff for the first time alleges that the disciplinary reports were re-processed and re-heard in retaliation for Plaintiff's "successful appeals."  Id. at 7, 9, 11.  Plaintiff maintains that the re-processing and re-hearing of the disciplinary reports and the subsequent classification decision at Charlotte

---

[4]Plaintiff states "[t]he fact provided is that Charles Matthews in his capacity had no authority to call a rehearing after a successful appeal pursuant to Ch. 33-601.309(4)."  Response, Doc. #36 at 10.

Correctional based upon those disciplinary reports violated the protection against double jeopardy.  Response at Doc. #32, p. 5.

With regard to Defendants McDonough and Shockley, Plaintiff relies upon the Defendants respective employment positions.  Id. at 9-10.  Specifically, Plaintiff states that Defendant Shockley's role as the Administrator over the Bureau of Inmate Appeals is to review all inmate grievances filed to the Florida Department of Corrections in order "to avoid deliberate indifference to a constitutional right."  Id. at 9.  Plaintiff admits that he cannot say that McDonough directed Defendants Shockley and Matthews to act as they did, but attributes liability to McDonough for failure to ensure that adequate procedures were in place.  Id. at 10.  Further, Plaintiff states "there is a history of widespread abuse that puts the responsible supervisor on notice of the need to correct the alleged deprivation."  Id. at 9.

IV.

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under the color of state law.  Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001).  In addition, Plaintiff must allege

and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. <u>Marsh</u>, 268 F.3d at 1059; <u>Swint v. City of Wadley</u>, 51 F.3d 988 (11th Cir. 1995); <u>Tittle v. Jefferson County Comm'n</u>, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994). A defendant who occupies a supervisory position may not be held liable under a theory of *respondeat superior* in a § 1983 action. <u>Monell v. Dep't of Soc. Serv.</u>, 436 U.S. 658, 690-692 (1978); <u>Quinn v. Monroe County</u>, 330 F.3d 1320, 1325 (11th Cir. 2003); <u>Farrow v. West</u>, 320 F.3d 1235 (11th Cir. 2003).

At the outset, the Court must first find that it has venue to hear the claim. A civil action not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in: (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).

Here, the Complaint contests two disciplinary reports that Plaintiff received during his incarceration at Okeechobee Correctional, which is located within the venue of the United States District Court for the Southern District of Florida. Additionally, the Complaint alleges a separate constitutional violation involving Plaintiff's classification status at Charlotte Correctional. Although Charlotte Correctional is within this

Court's venue, only Defendants McDonough and Shockley are named in the alleged incident involving Plaintiff's classification that occurred at Charlotte Correctional.

The Court shall dismiss an action when it is not the proper venue, unless it is "in the interest of justice" that it be transferred to a district or division in which it could have been brought.  28 U.S.C. § 1406(a).   However, 28 U.S.C. § 1406(b) provides that the jurisdiction of a district court is not impaired if a party does not object to venue.  The Defendants do not object to venue in the Ft. Myers Division in their Motion to Dismiss.  The Court finds it is not in the interests of justice to transfer the case since the Complaint arises from incidents occurring at Okeechobee and Charlotte Correctional.  Based on the foregoing, coupled with the leniency Courts provide to *pro se* plaintiffs, the Court will address the Defendants' Motion to Dismiss.

## V.

The Court agrees with the Defendants and finds that the Complaint is due to be dismissed for failure to state a claim upon which relief can be granted.  Although Plaintiff claims that his due process rights were violated by Okeechobee Correctional's disciplinary hearings, the Complaint does not provide any factual basis indicating a due process violation.  Similarly, the Complaint fails to state a § 1983 claim regarding Plaintiff's subsequent classification at Charlotte Correctional.  Additionally, the Complaint contains no factual allegations establishing Defendants

McDonough or Shockley's personal participation in the alleged incident and contains only a conclusory statement alleging their causal connection to the incident.  Further, although framed as a due process violation, to the extent Plaintiff seeks relief through the expungement of his disciplinary report, this type of relief is properly requested by filing a petition for habeas corpus, not a civil rights claim since such relief pertains to the fact or duration of Plaintiff's confinement.  <u>Preiser v. Rodriquez</u>, 411 U.S. 475 (1973) (challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus).[5]  Based on the foregoing, Plaintiff's Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## A.   *Respondeat Superior* and Supervisory Liability Claims

The Complaint contains no facts establishing that Defendants McDonough and Shockley personally participated in the alleged constitutional violation.  Since no facts indicate personal participation in the Amended Complaint, Plaintiff is required to show an affirmative causal connection between the named officials' acts and the alleged constitutional deprivation in order to state a claim.  <u>Harris v. Ostrout</u>, 65 F.3d 912, 917 (11th Cir. 1995).  The causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the

_____

[5]Plaintiff, however, must first exhaust his state court remedies with respect to any habeas claim prior to filing a petition in the appropriate federal court.

need to correct the alleged deprivation, and he fails to do so."
Brown, 906 F.2d at 671, or that a policy or custom was the "moving
force" behind the alleged misconduct.   Board of County Comm'rs v.
Brown, 117 S. Ct. 1382, 1388 (1997).   See also Jones v. Cannon, 174
F.3d 1271, 1292 (11th Cir. 1999); Tennant v. Florida, 111 F. Supp.
2d 1326 (S.D. Fla. 2000).   "The deprivations that constitute
widespread abuse sufficient to notify the supervising official must
be obvious, flagrant, rampant and of continued duration, rather
than isolated occurrences."   Brown, 906 F.2d at 671.
Alternatively, facts supporting an inference that the supervisor
directed the subordinate to act unlawfully or failed to stop them
from unlawful actions establishes a causal connection.   Cottone v.
Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Here, Plaintiff names Defendant Shockley because he "wrote his
signature approving the response" from S. Milliken on Plaintiff's
grievance, which was submitted to the Secretary of the Florida
Department of Corrections.   As previously stated, a defendant who
occupies a supervisory position may not be held liable under a
theory of *respondeat superior* in a § 1983 action.   Monell v. Dep't
of Soc. Serv., 436 U.S. 658, 690-692 (1978); Quinn v. Monroe
County, 330 F.3d 1320, 1325 (11th Cir. 2003); Farrow v. West, 320
F.3d 1235 (11th Cir. 2003).   Thus, to the extent Plaintiff
predicates liability on Defendant Shockley based on *respondeat*

*superior*, the Complaint fails to state a claim as to Defendant Shockley.

Similarly, the Complaint appears to predicate liability on Defendant McDonough based on his position as the Secretary of the Florida Department of Corrections.  <u>See</u> Complaint at 13-15.  In response to the Defendants' Motion to Dismiss, Plaintiff further alleges that McDonough is liable for failure to ensure that "adequate procedures" were in place.  Neither the Complaint nor the Response alleges that a particular "procedure" or a widespread practice caused Plaintiff's alleged constitutional violations.  Plaintiff does not argue that a particular policy is unconstitutional, rather he argues that the Defendant's acts were unconstitutional.  Further, Plaintiff admits that he cannot say that Defendant McDonough directed his employees how to respond to Plaintiff's grievances.  Because the Complaint does not contain any facts indicating a personal or causal connection to the alleged constitutional violation, the Complaint also fails to state a claim as to Defendant McDonough.

**B.  Plaintiff's Disciplinary Report and Disciplinary Hearing**

The Court recognizes that prison disciplinary proceedings are not part of a criminal prosecution, and therefore the full panoply of rights that are due a defendant in a criminal proceeding does not apply.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974) (citation omitted).  "In sum, there must be mutual accommodation between

institutional needs and objectives and the provisions of the Constitution that are of general application." Id.

The United States Supreme Court held "that written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Further, the Court held that "[a]t least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. The Court further explained "there must be a 'written statement by the fact finders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)).

The Court also noted "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. The Court explained its concern for institutional safety:

> Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious

sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required.  Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.  Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case.  The operation of a correctional institution is at best an extraordinary difficult undertaking.  Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments.  There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents.

Id. at 566-567.

An inmate facing a disciplinary charge, however, has no constitutional right to confrontation and cross-examination of witnesses furnishing evidence against him at the disciplinary hearing.  Id. at 567.  The Court left this matter to the sound discretion of the officials of the state prisons.  Id. at 569. Finally, the disciplinary hearing committee must be sufficiently

impartial in that it must not present "a hazard of arbitrary decision making." Id. at 571.

It is clear Plaintiff's alleged due process claims must be measured according to the test established by the United States Supreme Court in Wolff v. McDonnell. It is not a question of whether state law or an administrative departmental policy was violated,[6] but rather the inquiry concerns whether Plaintiff's allegations rise to the level of a federal constitutional violation, and whether the procedural deficiencies are ones that violate Plaintiff's due process rights guaranteed to him pursuant to the Fourteenth Amendment of the United States Constitution.

> Although the courts are required to recognize a constitutional duty to protect prisoners' rights, nevertheless "[t]he Supreme Court has articulated for the federal courts a policy of

---

[6]It is important to note that liberty interests protected by the Fourteenth Amendment may arise either from the Constitution itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983). To assert a state-created entitlement to a liberty interest, a party must show the state placed substantive limitations on official discretion. Barfield v. Brierton, 883 F.2d 923, 935 (11th Cir. 1989). Thus, a claim that a Department of Corrections rule or regulation contains mandatory language that substantially limits prison officials' discretion, thereby creating a liberty interest, has merit. See Caraballo-Sandoval v. Honsted, 35 F.3d 521, 525 (11th Cir. 1994). However, the United States Supreme Court, in Sandin v. Conner, 515 U.S. 472, 484, stated that while States may under certain circumstances create liberty interests which are protected by the Due Process Clause, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

minimum intrusion into the affairs of state prison administration; state prison officials enjoy wide discretion in the operation of state penal institutions." Williams v. Edwards, 547 F.2d 1206, 1212 (5th Cir. 1977); Campbell v. Beto, 460 F.2d 765, 767 (5th Cir. 1972); Breeden v. Jackson, 457 F.2d 578, 580 (4th Cir. 1972). In reviewing administrative findings under a federal habeas corpus or a section 1983 complaint, the standard to be applied is whether or not actions of the disciplinary committee were arbitrary and capricious or an abuse of discretion. Thomas v. Estelle, 603 F.2d 488, 490 (5th Cir. 1979), reh. denied, 606 F.2d 321 (5th Cir. 1979); Wilwording v. Swenson, 502 F.2d 844, 851 (8th Cir. 1974), cert. denied, 420 U.S. 912, 95 S.Ct. 835, 42 L.Ed.2d 843 (1975); U.S. v. Smith, 464 F.2d 194, 196 (10th Cir.), cert. denied, 409 U.S. 1066, 93 S.Ct. 566, 34 L.Ed. 2d 519 (1972). The federal courts cannot assume the task of retrying all prison disciplinary disputes. No de novo review of the disciplinary board's factual finding is required, but the courts must consider whether at least the decision is supported by "some facts" -- "whether any evidence at all" supports the action taken by the prison officials. Willis v. Ciccone, 506 F.2d 1011, 1018, 1019 n. 11 (8th Cir. 1974).

Here, Plaintiff does not contend that he was denied any of the procedural safeguards set forth in Wolff v. McDonnell. The facts as set forth in the Complaint and attachments show that Plaintiff received written notice specifically including the charges against him and was informed that the hearing would not take place prior to 24 hours of the delivery of the charges. See Complaint, Exh. 1 at "Charging Disciplinary Report" (hereinafter "CDR") dated Aug. 23, 2005, CDR dated Aug. 24, 2005, CDR (re: Aug. 23 D.R.) dated Sept. 20, 2005, CDR (re: Aug. 24 D.R) dated Sept. 20, 2005. Further, the

"Charging Disciplinary Report" referred Plaintiff to the operative Florida Administrative Code provisions and informed Plaintiff that any witness testimony would be presented to the committee by written statements. Id. Plaintiff had a disciplinary hearing, at which Plaintiff was present, and the committee found Plaintiff guilty. The committee provided Plaintiff with the "Disciplinary Hearing Worksheet." See Id., Exh. 1 dated Aug. 20, 2005, hearing time 10:05, Id. dated Aug. 20, 2005, hearing time 10:09, Id. hearing time 3:00, Id. hearing time 3:15. Plaintiff appealed the committee's initial finding of guilt, arguing that the investigating officer did not take a witness statement from Ms. Greaves, the person who Plaintiff had named as a witness. Assuming arguendo that the disciplinary hearing violated Plaintiff's due process rights by not including a written witness statement from Ms. Greaves in the initial disciplinary hearing, those disciplinary reports were re-processed and re-heard to then include a witness statement from Ms. Greaves, thereby curing any potential procedural deprivation. Bass v. Perin, 170 F.3d 1312, 1319 (11th Cir. 1999). Further, Ms. Greaves was the correctional officer who witnessed Plaintiff's disciplinary violation and wrote the disciplinary charging report, thus it is unlikely that Ms. Greaves' witness statement would include any additional facts not already included in the disciplinary report. Based on a review of the Complaint and Plaintiff's attachments, it is apparent that the committee relied upon facts in supporting their initial finding of guilt and did not

reach an arbitrary and capricious decision.  Thus, the Court finds the Complaint fails to state a constitutional claim arising out of the initial failure to include a witness statement.

Plaintiff further contends that his due process rights were violated because Defendant Matthews, the assistant warden, granted Plaintiff's grievance and issued the re-processing and re-hearing of the disciplinary reports in violation of Fla. Admin. Code 33-601.309(4).  The section upon which Plaintiff relies is titled: "Inmate Discipline- Review and Final Action."  Fla. Admin. Code 33-601.309.  Subsection four of this section provides:

> The warden or regional director of the institutions shall approve, modify downward or disapprove the recommended disciplinary action.  The above mentioned or the deputy assistant secretary- programs authorized to direct a rehearing of the disciplinary report as provided for in Rule 33-601.310, F.A.C.  The review shall be limited to matters contained in the disciplinary report.  If new evidence or procedural error is discovered, the warden or regional director shall remand the disciplinary report to the hearing officer or disciplinary team for a rehearing as provided for in Rule 33.601-310, F.A.C.  Review of each disciplinary report is the responsibility of the warden or regional director and cannot be delegated to other staff members.

Id.  Thus, Plaintiff relies on this section of the Fla. Admin. Code and argues that his constitutional rights were violated because the assistant warden, not the warden or regional director, authorized the re-processing and re-hearing of his disciplinary reports.

Plaintiff relies on the above-mentioned provision of the Fla. Admin. Code in error.  The Court again finds that the Complaint fails to state a § 1983 claim upon which relief can be granted.

The fact that it was the "assistant warden" who approved Plaintiff's grievance, thereby directing a re-processing and re-hearing of the disciplinary reports, did not violate Plaintiff's constitutional rights.   Further, Fla. Admin. Code 33-601.310 authorizes several officials including the warden, the facility administrator of a private facility, or the deputy director of the institutions (classification) or designee, to issue a re-hearing if an error is discovered after an inmate has been found guilty of a disciplinary infraction.

To the extent Plaintiff alleges a double jeopardy claim as a result of the re-processing of the disciplinary reports and re-hearing of the disciplinary infraction, the Court finds no facts substantiating a violation of the Fifth Amendment's protection against double jeopardy.   The United States Supreme Court noted that "the Double Jeopardy Clause provides three related protections:"

> It protects against a second prosecution for the same offense after acquittal.   It protects against a second prosecution for the same offense after conviction.   And it protects against multiple punishments for the same offense.

U.S. v. Wilson, 420 U.S. 332, 343 (1975).   These protections apply to criminal trials, not disciplinary hearings or subsequent inmate classifications utilized by jail officials to maintain safety and security at the jail.   See U.S. v. Duke, 527 F.2d 386, 390 (5th Cir. 1976) (noting the independence of prison officials in

administrative segregation from the traditional criminal processes that are subject to careful judicial scrutiny).[7]

Last, in response to the Motion to Dismiss, Plaintiff raises a First Amendment retaliation claim, which is not mentioned in his Complaint or attachments.[8]  Specifically, Plaintiff contends that Defendant Matthews directed Security to re-process the disciplinary reports and allowed the charges to be re-heard in retaliation for Plaintiff's "successful appeals."  Plaintiff does not provide any other facts supporting his retaliation claim.  Ordinarily the Court will not address claims that are not presented in the Complaint.  However, liberally construing *pro se* Plaintiff's Complaint, which does allege a First Amendment claim in vague terms, the Court will address Plaintiff's First Amendment retaliation claim.

A First Amendment retaliation claim requires: first, that a plaintiff's speech or act was Constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech.  See Bennett v. Hendrix, 423 F.3d 1247, (11th Cir. 2005)(citations

---

[7]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[8]The Complaint vaguely alleged a First Amendment claim. Defendants inferred that Plaintiff intended a First Amendment access to court claim and addressed that claim in their Motion to Dismiss.

omitted) (surveying the law in other circuits regarding a retaliation claim as this was a case of first impression); Pittman v. Tucker, 213 Fed. Appx. 867, 870 (11th Cir. 2007) (applying Bennett factors to a retaliation claim arising in the prison context). "The plaintiffs' claim depends not on the denial of a constitutional right, but on the harassment they received for exercising their rights. 'The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right.'" Bennett, 423 F.3d at 1253.

Here, the facts as presented by Plaintiff only satisfy the first requirement: plaintiff's filing of a grievance is constitutionally protected activity. Pittman, 213 Fed. Appx. at 870. However, the grievance Plaintiff wrote, in which he took issue with his disciplinary hearings because he was deprived of a witness statement, was approved. In approving the grievance, Defendant Matthews remedied the situation by re-processing the disciplinary reports and conducting a re-hearing. Apparently, it was this act that Plaintiff contends was done in retaliation. It is entirely unclear how the alleged retaliatory conduct adversely affected Plaintiff's protected speech. Nor do the facts establish a causal connection between the alleged retaliatory actions and the adverse effect on speech. Thus, the Complaint fails to state a claim upon which relief can be granted.

**C.  Plaintiff's Classification Status**

With respect to the claim arising from Plaintiff's classification at Charlotte Correctional whereby Plaintiff was placed on "C/M status," the Courts have consistently held that a prisoner's initial classification level based on the institution's custodian classification system does not create a liberty interest. In Moody, a prisoner complained that an outstanding warrant adversely affected his classification once confined. Moody v. Daggett, 429 U.S. 78, 88 n. 8 (1976). The Supreme Court "rejected the notion that every state action carrying adverse consequences for the prison inmates automatically activates a due process right." Similarly, the Fifth Circuit, citing a litany of cases, noted that "an inmate has no protectable liberty interest in his classification." Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003), cert. denied Cain v. Wilkerson, 540 U.S. 966 (2003). In Brooks v. Wainwright, 439 F. Supp. 1335, 1339 (M.D. Fla. 1977), the Court found that the Due Process Clause is not implicated "when the location or kind of an inmate's confinement is changed by transfer or classification." (citations omitted). As evidenced by the docket history in this case, an inmate's classification status is subject to change. In October, 2006, Plaintiff filed a notice with the Court indicating that "state classification" removed Plaintiff from confined management status. (Doc. #33.)

For the reasons set forth herein, the Court finds that the Complaint fails to state a claim upon which relief can be granted.

-24-

As such, the Court will grant the Defendants' Motion to Dismiss and Plaintiff's Complaint is dismissed without prejudice.[9]

ACCORDINGLY, it is hereby

**ORDERED**:

1.   The Motion to Dismiss filed on behalf of Defendants McDonough, Matthews, and Shockley (Doc. #30) is **GRANTED** for the reasons set forth herein and this case is **DISMISSED without prejudice**.

2.   The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this   17th   day of July, 2007.

JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record

---

[9]The Eleventh Circuit Court of Appeals has concluded that "a plaintiff must commence a § 1983 claim arising in Florida **within four (4) years** of the allegedly unconstitutional or otherwise illegal act," otherwise the Complaint may be time-barred.  Burton v. City of Belle Glade, 178 F.3d 1175, 1188 (11th Cir. 1999). Plaintiff should be cautious of the statute of limitations. Plaintiff should also note that a Complaint arising from incidents at Okeechobee Correctional should be filed in the U.S. District Court for the **Southern District** of Florida.